KAREN MCCONVILLE, SBN 269234
McConville Law
24 Professional Center Parkway, Suite 240-D
San Rafael, California 94903
Tel: 415-786-7806
Email: kmcconville3@gmail.com

Attorney for
Jose Vega-Sainz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE VEGA-SAINZ,<br><br>Defendant. | Case No. CR-19-0602-EMC<br>CR-19-0604-EMC<br><br>**SUPPLEMENTAL SENTENCING MEMORANDUM**<br><br>Date: June 23, 2021<br>Time: 2.30pm<br><br>The Honorable Edward M. Chen |

## INTRODUCTION

Defendant, Jose Vega-Sainz, submits the following supplemental sentencing memorandum supporting the defendant's requested sentence and to further brief the Court on Mr. Vega-Sainz' eligibility under Safety Valve.

On May 14, 2021, counsel for Mr. Vega-Sainz submitted briefing arguing his eligibility for safety valve. *Dkt.* 114 (Case no. 19-000602-EMC). The government submitted briefing

arguing against safety valve eligibility. *Dkt* 113. On May 26, 2021, this court found there was "sufficient connection" between the gun and drug transactions to disqualify the Defendant from being eligible for safety valve. *Dkt*. 117. The court did not find that the Defendant was *a leader or organizer of others in the offense conduct* but a mere facilitator and thus this was not the basis for this Court excluding the defendant from being safety valve eligible. *Id*.

      Mr. Vega-Sainz would like to apprise this Court of additional facts and provide clarity for the Court as to specific concerns identified by the Court at the hearing on May 26, 2021, that may affect the Court's decision on safety valve eligibility.

## ARGUMENT

**I.  The Defendant did not have Actual or Constructive Possession of a Firearm During the Drug Transactions on July 2 or October 10, 2019.**

      A review of the discovery produced by the government confirms that Mr. Vega-Sainz never possessed a firearm during the drug and firearm transactions that took place with the CI on July 2, 2019, and October 10, 2019 because he was not physically present for these transactions. The investigative reports for the July 2, 2019, transaction detail nine surveillance units at the location presumed to be Mr. Vega-Sainz' home before and during the transaction (it was later learned this was not his home). These units variously comment about the presence of vehicles and individuals, but no one observes Mr. Vega-Sainz at the location because he was not present during the transaction. In fact, during the debrief, post transaction, the CI confirms Mr. Vega-Sainz was not present at the trade. He only set up the meet telephonically.

      Similarly, the investigative reports on October 10, 2019, confirm that Mr. Vega-Sainz was not present. The CI knows before the transaction takes place that Mr. Vega-Sainz would not be present because he told him he would not be in phone calls between the two. On both occasions he is neither present, nor in proximity to the vehicle(s) where the guns and drugs were

located and ultimately exchanged with the CI. One may speculate as to his whereabouts but, as the Courts have held "possession cannot be determined by "pure speculation" " *United States v. Baldon*, No. 18-10411, at *22 (9th Cir. Apr. 21, 2020).

The investigative reports confirm that Mr. Vega-Sainz never actually possessed the firearms traded during the drug transactions on July 2 or October 10, 2019, or the drugs for that matter. His co-defendants conducted both the drug and firearm transactions on the only two dates that invoke questionability as to his eligibility for safety valve. The government may argue constructive possession, but that argument must fail given Mr. Vega-Sainz' complete absence at the location where the firearms and drugs were traded.

The Court of Appeals have held that:

> "Constructive possession exists when a person does not have actual possession but instead *knowingly* has the power and the *intention* at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (emphasis in original) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) . "

*United States v. Barron*, 940 F.3d 903, 916 (6th Cir. 2019)

In distinguishing the requirements necessary to demonstrate dominion and control in support of an inference of constructive possession, the ninth circuit Court of Appeals have stated:

> "*Kelso*, *Cazares*, and *Highsmith* reflect our long history of "carefully preserv[ing] the requirement that the government demonstrate sufficient indicia of dominion and control to support the inference of constructive possession." *United States v. Disla*, 805 F.2d 1340, 1351 (9th Cir. 1986). The government cannot rely only on evidence of "mere proximity" to the contraband, "mere presence on the property where it is located, or mere association, without more, with the person who does control the [contraband] or the property . . . ."

*United States v. Baldon*, No. 18-10411, at *22-23 (9th Cir. Apr. 21, 2020)

Similarly, the Court of Appeals in *United States v. Barron* affirmed:

> "It is without question that '[p]resence alone' near a gun ... does not 'show the requisite knowledge, power, or intention to exercise control over' the gun to prove constructive possession." *Id.*(quoting *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc)). Nor is "[m]ere presence on the scene plus association with illegal possessors ... enough" to establish constructive possession. *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir. 1976)". (internal quotations and citations omitted).

*United States v. Barron*, 940 F.3d 903, 916 (6th Cir. 2019)

On both occasions Mr. Vega-Sainz is neither present, nor in proximity to the vehicle(s) where the guns and drugs were located and ultimately exchanged with the CI and certainly exercised no control over the weapons before, during or after the transactions. He set up the transactions, but he was not there for them, his co-defendants were. Moreover, the Government has presented no evidence that the Mr. Vega-Sainz had ownership or control of the guns involved in the July 2, 2019, and October 10, 2019, transactions. In fact, they concede he was merely a 'broker'; "[a]ccording to the case agent, *Vega-Sainz's brokered the transactions and Soria-Sanchez was ultimately the seller"*. PSR ¶ 48 (*emphasis added*).

This court has found that the Defendant was not a leader, supervisor or organizer of others in the offense conduct. He was a "broker", with mere association to others who possessed and had control over the firearms on the dates at issue. When the CI requested drugs and firearms Mr. Vega-Sainz did not have, he called those who did, and they met with the CI to supply the requested items. He may have been on the phone close to the time of the transaction but that was the extent of his participation. As mentioned in prior briefing when a search warrant was executed at Mr. Vega-Sainz' home neither drug nor guns were found. His codefendants had possession and control of the firearms. *PSR* ¶46.

Taking all of the above into consideration, it cannot be demonstrated that Mr. Vega-Sainz did knowingly have the power and the intention to exercise dominion and control over the guns, either directly or through others on July 2 or October 10, 2019. Neither actual nor constructive

possession has been established. Thus, the Defendant ***did not possess*** a firearm or other dangerous weapon in connection with the offense.

### II.     The Firearms Were Not Present in Connection with the Drug Transactions

In addition to the firearms neither being actually nor constructively possessed by Mr. Vega-Sainz it remains the defense's position that the firearms were not connected with the drug trafficking transactions because they were two separate and discreet transactions. The firearms were not present to protect the drugs during the two transactions with the CI. The firearms were present because they were by themselves being sold to the CI. The investigative reports into the July 2, 2019, and October 10, 2019, transactions confirm that during the initial phone calls and text messages between Mr. Vega-Sainz and the CI, that both parties understood that the drugs and firearms were being treated as entirely separate transactions. The drugs were one price, the firearms another. The success of the transactions was not contingent upon the sale of both the drugs and firearms. That is even more apparent when on October 9, 2019, the CI agreed to purchase two pounds of methamphetamine, two rifles and two handguns being offered for sale only to be told only one firearm was available. The transaction still went ahead.

The investigative report on July 2, 2019, indicate that the drugs were exchanged between co-defendant, Soria Sanchez, and the CI in one vehicle before the gun was exchanged in a separate vehicle by co-defendant, Jose Buenrostoro, some 30 minutes later. During the debrief, the CI expressly referred to the firearm transaction as being a 'second deal'. During the October 10, 2019, transactions the CI paid separately for the drugs and firearm sold to him by co-defendant, Jose Buenrostro.

To borrow the analogy put forward by the Court of Appeal in *United States v Carillo-Ayala,* "This was like going to the cafeteria and you take one from this pot and one from that pot,

you know, I'll have some of each. Discussing or exchanging firearms to "grease the wheels" for drugs sales, by itself and without anymore more, does not suffice to show that a Defendant possessed firearms "in connection with" his drug offense". *United States v. Carillo-Ayala*, 713 F.3d 82, 916 (11th Cir. 2013).

### III.     Sentence Requested

Mr. Vega-Sainz' asks that if the Court still finds that he has not met the bar for safety valve eligibility that he be sentenced to the mandatory minimum for the offense, 60 months. However, if the Court finds that he is safety valve eligible and he truthfully debriefs with the government that he be sentenced to three years or 36 months as previously requested in the sentencing memorandum filed with the Court at docket numbers 115 for case 19-00602 and 147 for case 19-00604.

### CONCLUSION

This Court has already found that Mr. Vega-Sainz was not a leader, manager or supervisor in the offense conduct.  Mr. Vega-Sainz would ask this Court to conclude that he also did not *possess* firearms during the two transactions at issue with the intent that they been used to facilitate the sale of drugs. He respectfully submits that he has met the low burden to prove by a preponderance of evidence that he meets all criteria necessary to qualify for safety valve and should be permitted to argue to this Court for a sentence below the mandatory minimum.

Date: June 16, 2021.                                                       Respectfully submitted,


                                                                    _____/s/_____
                                                                    KAREN MCCONVILLE
                                                                    Attorney for Jose Vega-Sainz